IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DARRYL PAUL,
a/k/a DARRYL LAMONT

            Defendant.

25-mj-1244

---

## SUPPLEMENTAL DETENTION BRIEFING

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Caitlin M. Higgins, Assistant United States Attorney, of counsel, hereby files its Supplemental Detention Briefing.

## FACTUAL BACKGROUND

For the last twenty-five years, the defendant owned and operated NoLimit Entertainment ("NLE"), a business that provides nude dancers and topless bartenders for parties. During that time, he engaged in a pattern of coercive conduct to induce women to perform commercial sex acts in exchange for a thing of value. Specifically, based on witness/victim testimony and corroborating evidence, the defendant preyed on the most vulnerable women who worked for him. The defendant easily identified certain vulnerabilities—such as youth, limited education, financial distress, drug addiction, homelessness, past trauma, and more—and lured the women to engage in sex acts with him (sometimes by drugging and raping them) and others (women during performances) for his sexual and financial benefit. He provided the women with cocaine and alcohol to ease their

1

inhibitions with him and during stag parties. With this multi-faceted, layered coercion, the defendant often switched between the role of a CEO and Romeo pimp. On the one hand, as a CEO pimp, he was all business and made the women believe, predicated upon their insecurities, that they could make a tremendous amount of money by working for him. To work for him, however, the women had to engage in oral sex with each other during performances. Indeed, the defendant incentivized the women by creating a subjective standard for each woman's base pay. The "best" dancers were paid a higher base. Simultaneously, the defendant cultivated a culture of fear that if the women did not comply with his directives, he would not only fire from them from NLE, but he would also blackball them from working for anyone else in the industry. As a Romeo pimp, he loved bombed the women and made them believe he wanted a relationship with them—all the while capitalizing on their insecurities and rendering them dependent upon him to coerce them into engaging in commercial sex acts with him and others, all for his benefit.

This defendant poses a danger to the community—particularly to potential victims and witnesses if he is released. The Court need look no further than his preemptive muzzling of employees by requiring that they sign a non-disclosure agreement. Likewise, the defendant had a pattern of harassing and stalking employees if they left NLE—he threatened them, he stalked them, and he intimidated them. He has never had more incentive to keep former employees and other potential witnesses quiet than now.

During the detention hearing, the Court asked for supplemental briefing on whether a financial surety assuasages the risk of danger to the community. As discussed below, the Second Circuit, and courts in this district, held that financial sureties are insufficient to address the risk of danger to the community.

# ARGUMENT

I. **The Court Should Detain the Defendant Because No Condition or Combination of Conditions Can Reasonably Assure the Safety of the Community or Defendant's Appearance.**

   **A. The Bail Reform Act**

The Bail Reform Act empowers federal courts to order a defendant detained pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of dangerousness must be supported by clear and convincing evidence. *See, e.g.*, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). The Court may also detain the defendant based on the risk of obstruction of justice. *See United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000). Courts in the Second Circuit have held that pretrial detention for obstruction of justice is appropriate as long as the Government can establish by "clear and convincing evidence" that "there exists a serious risk" the defendant would "threaten, injure, or intimidate, a prospective witness or juror." *United States v. Leon*, 766 F.2d 77, 82 (2d Cir. 1985); *see also United States v. Zherka*, 592 F. App'x 35, 35 (2d Cir. 2015) (summary order) ("A serious risk of obstruction of justice may qualify as . . . a danger to the community.").

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense is a violation of section 1591; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the person's "character, . . . past conduct, . . . [and]

3

financial resources"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." *See* 18 U.S.C. § 3142(g). The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Additionally, where, as here, a defendant is charged with sex trafficking in violation of 18 U.S.C. § 1951 and possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841 and—it shall be presumed, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. *See* 18 U.S.C. §§ 3142(e)(3)(A) and (D).

### B. The Defendant Proffered No Evidence that He is Not a Danger to the Community.

The defendant did not dispute that two rebuttable presumptions apply to his case. Once triggered, the presumptions "place[d] on the defendant only the burden of coming forward with evidence to rebut it." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986). Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citing *Martir*, 782 F.2d at 1144). The government, however, "retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Id.*

4

Here, the defendant has not met his burden of production because he neither proffered nor produced any evidence that he does not pose a danger to the community. Although his burden is one of production and not persuasion, the law requires more than a conclusory statement. *See, e.g.*, *United States v. Cordero*, No. 20-CR-142-A, 2020 WL 6579073, at *5 (W.D.N.Y. Nov. 10, 2020) ("[T]he defendant has not met his burden of production to show that home incarceration in his relative's residence while subject to electronic monitoring, and upon pain of the forfeiture of other relatives' residence and cash, will reasonably mitigate the particular risk of pretrial recidivism and drug trafficking that he poses. . . . Given the statutory presumptions of danger, the Court finds that the United States has shown that home incarceration even while subject to electronic monitoring does not adequately protect the community from the risks of drug-trafficking the defendant poses.").

Even if the Court holds that the defendant met his burden of production, the Court should still detain him because there are no conditions or combination of conditions that will ensure the safety of the community. During the detention hearing, the government proffered extensively as to the risk this defendant poses to the community if he is released. In particular, and based on both his business model and history, the defendant poses a risk of obstruction of justice with respect to potential victims and witnesses. The proposed conditions of release—namely his mother posting her home as a property bond, his release to his mother's custody and residence, and the general prohibition on committing another crime or intimidating witnesses, coupled with electronic monitoring, are wholly inadequate to address the risk of danger here.

First, the property bond does not assuage the risk of danger to the community. On its face, 18 U.S.C. § 3142(c)(B)(xi), the condition addressing property bonds, explicitly pertains

5

to risk of flight stating that the defendant "execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required." Furthermore, Congress specifically found that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond." S.Rep. No. 225, 98th Congress., 1st Sess.1983, 1984 U.S.C.C.A.N. 3198-99 (n.60). Where Congress leads, courts follow—and because the statute expressly contemplates using property bonds to secure a defendant's appearance, courts pay such bonds little regard when evaluating a defendant's danger to the community.

Indeed, on at least three occasions, the Second Circuit has expressed doubt that bonds are capable to assure the safety of the community or any other person. *See Mercedes*, 254 F.3d at 436–37 (agreeing "with the government that [strong community ties, a substantial bond, or electronic monitoring cannot rebut the presumption of dangerousness] in this case"); *United States v. Ferranti*, 66 F.3d 540, 543 (2d Cir. 1995) (stating that the bond "would have deterred flight, not danger"); *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) ("The bail package offered by Rodriguez, although it may reasonably assure the appearance of Rodriguez at trial, will not reasonably assure the safety of the community." (emphasis added)); *United States v. Argraves*, No. 3:09CR117 (MRK), 2009 WL 1859226, at *9 (D. Conn. June 26, 2009) ("[T]he Second Circuit has stated repeatedly that conditions of release that may be sufficient to overcome a risk of flight—including, but not limited to, increased financial obligations, decreased access to liquid assets, surrender of a passport, and further travel restrictions—are often insufficient to reasonably assure the community's safety. *See,*

6

to risk of flight stating that the defendant "execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required." Furthermore, Congress specifically found that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond." S.Rep. No. 225, 98th Congress., 1st Sess.1983, 1984 U.S.C.C.A.N. 3198-99 (n.60). Where Congress leads, courts follow—and because the statute expressly contemplates using property bonds to secure a defendant's appearance, courts pay such bonds little regard when evaluating a defendant's danger to the community.

Indeed, on at least three occasions, the Second Circuit has expressed doubt that bonds are capable to assure the safety of the community or any other person. *See Mercedes*, 254 F.3d at 436–37 (agreeing "with the government that [strong community ties, a substantial bond, or electronic monitoring cannot rebut the presumption of dangerousness] in this case"); *United States v. Ferranti*, 66 F.3d 540, 543 (2d Cir. 1995) (stating that the bond "would have deterred flight, not danger"); *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) ("The bail package offered by Rodriguez, although it may reasonably assure the appearance of Rodriguez at trial, will not reasonably assure the safety of the community." (emphasis added)); *United States v. Argraves*, No. 3:09CR117 (MRK), 2009 WL 1859226, at *9 (D. Conn. June 26, 2009) ("[T]he Second Circuit has stated repeatedly that conditions of release that may be sufficient to overcome a risk of flight—including, but not limited to, increased financial obligations, decreased access to liquid assets, surrender of a passport, and further travel restrictions—are often insufficient to reasonably assure the community's safety. *See,*

*e.g.*, *Rodriguez,* 950 F.2d at 89; *United States v. Colombo,* 777 F.2d 96, 100 (2d Cir.1985)" (internal quotation marks omitted)).

Courts in this district have agreed. *See, e.g.*, *United States v. Hinkle*, No. 23-CR-99-LJV-JJM, 2024 WL 5102775, at *3 (W.D.N.Y. Dec. 13, 2024) ("[W]hile the security that Anderson and Hinkle's son put forward might well mitigate risk of flight, it does not alter the dangerousness calculation."); *United States v. Medina*, No. 20-CR-29-A, 2021 WL 5161810, at *5 (W.D.N.Y. Nov. 5, 2021) ("That property is where Defendant's fiancé and his family lives, and the defense reasons Defendant thus would not put his family in jeopardy, and that this proposed surety rebuts the presumption of dangerousness and flight risk.  The Court disagrees. Even if the proposed property bail were to mitigate the risk of flight, it would not do so as to dangerousness.").

Second, and pursuant to 18 U.S.C. § 3142(c)(B)(i), the Court proposed releasing the defendant to the custody of his 79-year-old mother, who must agree "to assume supervision and to report any violation of a release condition to the court."  Such custodians must be "chosen with care," and the Court must "impress on the custodian the duty they owe to the court and to the public to carry out the supervision to which they are agreeing and to report any violations to the court."  S. Rep. No. 225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182.  Because the defendant's mother would be serving as a financial surety *and* a custodian, she will face a true Sophie's Choice if the defendant violates the conditions of his release.  On the one hand, by honoring her duty as a custodian and reporting any violation, she stands to lose her home and send her son to jail.  On the other, by turning a blind eye to violations, she protects her home and her son.

7

The defendant has engaged in illegal conduct for years despite having a close-knit relationship with his mother. The defendant has proven himself adept at evading law enforcement—there is simply no reason to believe he will not be able to similarly evade his mother. For example, the defendant's mother may not be able to discern who should be allowed at the house and who should not. She may trust her son—who has lied about his conduct for years—when he says something is permissible.

Third, even if the property bond addressed the risk of danger to the community (which it does not) and release to his mother's residence was sufficient (which it is not), electronic monitoring does nothing to address the legitimate risk of witness tampering raised above. The Second Circuit has held that the "sort of electronic surveillance suggested by the defendants ... can be circumvented. Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills." *LaFontaine*, 210 F.3d at 135. The defendant's contention is that this is true in any case. Perhaps. But in some cases, like here, the concern is more amplified than others. This is particularly true given the fact that the proposed conditions have no limitation on electronic devices—which the defendant used to perpetrate his scheme for years. Furthermore, the general prohibition that the defendant not commit a crime or intimidate a witness has no teeth. Indeed, the prohibition "does not at all impede his ability to do so, and requires no more of him than that which the law already demands from [a defendant] and every other citizen." *Ferranti*, 66 F.3d at 544.

Accordingly, the Court should detain the defendant because there are no conditions or combination of conditions that can reasonably assure the safety of the community. That the defendant's mother is willing to post a property bond does not alter this calculation.

## CONCLUSION

For all the reasons stated above, the Court should detain the defendant.

DATED: Buffalo, New York, March 18, 2025.

                        MICHAEL DIGIACOMO
                        United States Attorney

BY:     */s Caitlin M. Higgins*_____
         CAITLIN M. HIGGINS
         Assistant United States Attorney
         United States Attorney's Office
         Western District of New York
         138 Delaware Avenue
         Buffalo, New York  14202
         716/843-5818
         Caitlin.Higgins@usdoj.gov